*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE T. ROBERTSON, Minor.

UNPUBLISHED
August 19, 2025
2:34 PM

No. 373503
Macomb Circuit Court
Family Division
LC No. 2023-000118-NA

Before: BORRELLO, P.J., and M. J. KELLY and TREBILCOCK, JJ.

PER CURIAM.

Respondent appeals as of right the order terminating her parental rights under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist); MCL 712A.19b(3)(c)(*ii*) (other conditions exist that cause the child to come within the court's jurisdiction); MCL 712A.19b(3)(g) (parent fails to provide proper care or custody although able to do so); and MCL 712A.19b(3)(j) (reasonable likelihood child will be harmed if returned to parent). For the reasons set forth in this opinion, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arose out of concerns that respondent failed to provide proper supervision for her young son, TR, and failed to ensure that TR received appropriate mental health care. There were reports that TR had attempted to break into a trailer in the trailer park where he and respondent lived and that TR had been seen outside trying to light things on fire while unsupervised. There were also concerns that respondent had untreated mental health issues and was abusing substances. She had threatened neighbors and seemed to indicate that she had locked TR in a room without food, water, or access to a bathroom. Respondent refused to cooperate with Child Protective

-1-

Services, and a petition was filed seeking to remove TR from the care of respondent and TR's father.[1]

TR was removed from respondent's home and placed with his maternal aunt. The trial court authorized the petition. Before the adjudication, respondent exhibited inappropriate behavior during parenting time that included discussing the status of the case with TR, making negative comments about the caregiver, and providing unhealthy snacks. Respondent was also whispering in TR's ear, and he would not disclose what respondent said. Respondent became combative and argumentative when redirected during parenting time. TR tended to exhibit "explosive" behaviors after parenting time visits with respondent. The trial court ordered respondent to not discuss the case with TR and further ordered that the Department of Health and Human Services (DHHS) could use a therapist in a therapeutic setting as a visitation designee for respondent's visits. The trial court also ordered a trauma assessment for TR. At some point, respondent was evicted from the trailer where she had been living.

During one parenting time visit, respondent grabbed TR and refused to let go when it came time for him to leave. DHHS security became involved and escorted respondent and TR to the car. While at the car, respondent disparaged TR's grandmother, wishing she would "die in a fiery death." The trial court ordered remote parenting time for respondent by way of telephone or video conferencing technology.

At the adjudication on February 12, 2024, respondent pleaded no contest to the factual basis for the petition. Mallory Olson, the foster-care case worker, provided DHHS's recommendation for respondent's parent agency agreement (PAA), which the trial court adopted. The treatment plan included a psychological evaluation providing recommendations to be followed by respondent, a substance abuse assessment with recommendations to be followed, random drug screens, maintaining suitable housing, maintaining a legal income, complying with requirements in her various other legal matters,[2] and parenting time.

However, the foster-care worker failed to refer respondent to services until April 2024, apparently due to a misunderstanding about the court order. At the April 18, 2024 dispositional review hearing, respondent's attorney indicated that respondent had provided proof of her Social Security income that needed to be forwarded to the DHHS and that respondent was in the process of applying for Section 8 housing. Respondent was apparently staying with a friend on weeknights in the interim, and respondent had not provided that address. Respondent also continued to exhibit inappropriate behaviors during parenting time. She discussed the case with TR, made false promises to him, and was argumentative with the foster-care worker and caregiver. Furthermore, respondent began screen recording the video calls and posting them to social media with the caregiver's personal information. As a result of this behavior, the caregiver had become

---

[1] TR's father had his parental rights terminated along with respondent, but he is not a party to this appeal.

[2] Respondent was in the county jail on the day of the adjudication hearing.

uncomfortable with turning her camera on, and the remote visits had thus been limited solely to audio communication.

The trial court found that reasonable reunification efforts had *not* been made by the time of the April 18 hearing because of the failure by the DHHS to refer respondent for services, and the court ordered that referrals should be made for the services required by the treatment plan, that reasonable reunification efforts should be made, and that respondent should comply with and benefit from the treatment plan. It was further ordered that respondent's parenting time would be in person and in a therapeutic setting, with referrals for therapeutic visits to be made by the DHHS and parenting time to continue to be supervised and in a remote setting pending the start of therapeutic parenting time.

As the review period progressed, respondent failed to engage in referred services, obtain stable housing, provide proof of her income, or attend required drug screens. Regarding therapeutic parenting visits, the service provider required respondent's insurance cards and she had not provided them because she claimed not to possess them. Although the foster-care worker attempted to assist respondent in obtaining her insurance cards, respondent refused to cooperate and refused to provide them. DHHS had made the referrals for these services and, consequently, the trial court found that the DHHS had rectified its deficiency and made reasonable reunification efforts. Respondent had been arrested and convicted of possessing heroin. She was placed on probation but failed to comply with her probation requirements. The maternal aunt, with whom TR was placed, reported TR was doing well and making progress behaviorally and academically.

On September 25, 2024, DHHS filed a supplemental petition to terminate respondent's parental rights, which the trial court authorized. At the termination hearing, the foster-care workers indicated respondent failed to participate in many of the services listed in the PAA and continued to have issues with making inappropriate comments during parenting time. During one virtual visit, respondent was in a car while somebody else was driving and told TR that she was driving by and waiving at him. TR became worried that respondent would show up at the house or at his school. Respondent did not have stable housing after she was evicted from her trailer. She claimed to be in and out of motels, but she refused to provide addresses or further information about her living situation. At some point near the time of the termination hearing, respondent was living temporarily in a domestic-violence shelter following an incident with a person with whom respondent had been living. According to respondent, she had hoped this person would become her roommate.

There was also an incident where respondent showed up at her mother's house while TR was at school, and the police were called to remove respondent from the premises. Although TR was placed with respondent's sister, TR also spent a lot of time at his maternal grandmother's home as well and he had been there that morning before going to school. At the time of the incident at the maternal grandmother's house, respondent had an active arrest warrant from Macomb County, but the police declined to arrest her at that time because she was pregnant.

Respondent's psychological evaluation indicated that she was diagnosed with bipolar disorder, anxiety, post-traumatic stress disorder, and paranoid personality traits. It was recommended that respondent engage in individual therapy and consult with a psychiatrist for medication management. Respondent was referred for individual therapy, but respondent was

unable to get started with therapy because she did not provide her insurance card. Both foster-care workers testified that respondent never started the individual therapy to which she was referred. However, the second foster-care worker testified that shortly before the termination hearing, respondent provided her insurance card and claimed to be engaged with services through the shelter where she was staying.

There was testimony that TR was doing well in his placement and was making good progress academically at school, but there was also testimony that he showed signs of regressing behaviorally by getting into fights with other children at school and acting out at home.

The trial court determined statutory grounds existed for termination. In its best-interests analysis, the trial court focused on TR's need for stability, respondent's inability to provide stability, and TR's placement with a relative. The trial court noted respondent had significant mental health concerns she needed to address but failed to do so. The trial court determined it was in TR's best interest to terminate respondent's parental rights. This appeal followed.

## II. REASONABLE EFFORTS

Respondent first argues on appeal that her parental rights should not have been terminated because reasonable reunification efforts were not made.

"This Court generally reviews for clear error a trial court's decision regarding reasonable reunification efforts." *In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023); slip op at 2. The DHHS generally " 'has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights.' " *In re Sanborn*, 337 Mich App 252, 258; 976 NW2d 44 (2021), quoting *In re Hicks*, 500 Mich 79, 85; 893 NW2d 637 (2017). "This general duty exists to reunite the parent and children unless certain aggravating circumstances exist." *In re Sanborn*, 337 Mich App at 259 (quotation marks and citation omitted). "In addition to DHHS's duty to offer services to the respondent-parent, the respondent-parent has a duty to participate in and benefit from the services." *In re MJC*, ___ Mich App at ___; slip op at 3.

Respondent primarily contends that reversal is required because she was not given reasonable accommodations under the American with Disabilities Act (ADA), 42 USC 12101 *et seq.*, based on her mental health issues. Our Supreme Court has held that "efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *In re Hicks/Brown*, 500 Mich at 86.

In this case, however, the referee specifically asked the parties at the termination hearing, "do all parties agree that ADA does not apply?" Respondent's attorney expressly answered, "Yes." Therefore, this issue is waived for appeal. "A waiver consists of the intentional relinquishment or abandonment of a known right," and a "party who waives a right is precluded from seeking appellate review based on a denial of that right because waiver eliminates any error." *In re MJC*, ___ Mich App at ___; slip op at 3 (quotation marks and citations omitted). "[A] valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose or be an implied waiver evidenced by a party's decisive, unequivocal conduct reasonably [implying] the intent to waive." *Id.* (quotation marks and citation omitted; alteration

in original). Here, respondent's intent to waive any claim for accommodation under the ADA could not have been clearer, and this argument is thus waived for appellate review. Moreover, "when challenging the services offered, [respondent] must establish that she would have fared better if other services had been offered" because "[w]ithout an identification of services to accommodate mother's intellectual disability, we are left to speculate what other services the DHHS *could* have offered." *In re Sanborn*, 337 Mich App at 266 (citation omitted). Respondent in this case has not explained how she would have fared better if other services had been offered, nor has she proposed other services that *should* have been offered; she merely complains in conclusory fashion that the services offered were deficient. Respondent has therefore failed to establish that reversal is required on this basis. *Id*.

Respondent additionally asserts that she should have been given more time to work toward completing her parent-agency treatment plan. However, respondent ignores her own failures to engage with many of the services that were referred, her failure to obtain and provide her insurance card that prevented therapeutic services from starting, and her failure to demonstrate that she had sufficiently benefited from services thus far. *Id*. at ___; slip op at 3. Respondent has not demonstrated that the trial court clearly erred by finding that reasonable efforts had been made before termination. *Id*. at ___; slip op at 2.

Next, although respondent cites the statutory grounds on which the termination of her parental rights was based, she does not develop any argument explaining how she believes the trial court's finding that statutory grounds had been proven was erroneous. Respondent's argument is entirely focused on her perception that reasonable efforts were lacking. "DHHS's duty to make reasonable efforts toward reunification is distinct from its duty to prove at least one statutory ground for termination by clear and convincing evidence . . . ." *In re MJC*, ___ Mich App at ___; slip op at 3. Because respondent has not developed any argument challenging the court's statutory grounds findings, any such argument is abandoned. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) (quotation marks and citation omitted; alterations in original).

### III. PARENTING TIME MODIFICATION

Respondent next argues that the trial court abused its discretion by modifying her parenting time to remote-only parenting time because this essentially amounted to a denial of parenting time and the therapeutic parenting time that was ordered was never implemented.

Under MCL 712A.13a(13), a parent of a child who has been removed, either before or after adjudication, is "entitled to parenting time with a removed child unless it 'may be harmful to the juvenile's life, physical health, or mental well-being . . . .' " *In re Ott*, 344 Mich App 723, 738-739; 2 NW3d 120 (2022), quoting MCL 712A.13a(13) (ellipsis in original).

Here, contrary to respondent's insinuation, respondent's parenting time was never suspended and she was not denied parenting time. Instead, her parenting time was instead limited to remote-technology visits as a result of an incident at the end of a parenting time visit that necessitated the involvement of security guards. The court ordered that visits should return to in-

person visits in a therapeutic setting, but these visits were not implemented because respondent failed to cooperate in providing the necessary information and documentation—namely, her insurance card—required to begin those services. Respondent also continued to have issues with inappropriate behaviors during the period of remote parenting time.

Although respondent argues that "[i]n essence the mother was denied parenting time in this matter," she does not further develop this claim. Other than citing general rules regarding a parent's right to parenting time and other general rules regarding the standard of review, this single sentence constitutes the entirety of respondent's appellate argument regarding this particular assertion that her remote parenting time was essentially equivalent to a denial of parenting time. Respondent does not cite any authority prohibiting the imposition of conditions on parenting time generally, nor does she cite any authority for the proposition that the trial court erred by imposing remote parenting time in light of respondent's behavior at the conclusion of a parenting time visit that led to the involvement of security. Therefore, this issue is abandoned. "A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position." *In re TK*, 306 Mich App at 712 (quotation marks and citation omitted; alterations in original).

IV.  BEST INTERESTS

Finally, respondent argues there was no evidence to support the trial court's finding that termination of respondent's parental rights was in TR's best interests.

This Court reviews "for clear error the trial court's determination regarding the child[]'s best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A trial court's decision is clearly erroneous if although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012) (quotation marks, citation, and alteration omitted).

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713 (quotation marks and citation omitted). The court must also consider a child's placement with relatives, which is a factor that generally weighs against termination if the child is placed with a relative. *In re Gonzales/Martinez*, 310 Mich App at 434. Additional factors that may be considered by the court include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. "[T]he focus at the best-interest stage has always been on the child, not the parent." *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013).

Here, the record reflects that respondent had untreated mental health and substance abuse issues that she failed to adequately rectify during the case. Respondent failed to participate in and benefit from services that were offered to address these concerns. In particular, respondent failed to cooperate in providing her insurance card so she could begin individual therapy and therapeutic parenting time that required that documentation. Respondent failed to maintain stable housing suitable for her and her child, and she failed to show that she could consistently display appropriate behaviors relative to parenting time and her interactions with TR's caregivers. Although TR was placed with relatives, "that fact is not dispositive given that a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Atchley*, 341 Mich App 332, 347; 990 NW2d 685 (2022) (quotation marks and citation omitted). Respondent did not demonstrate that she could provide the stability and permanency that her child needed, and the record showed that TR was having improved success in his placement. Moreover, although respondent claims that TR had a strong bond with her, she ignores the evidence that TR often did not want to participate in visits with her, often ended the visits early, and often displayed regressive negative behaviors following visits with respondent. Based on our review of the record, we are not left with a definite and firm conviction that the trial court made a mistake by finding that termination of respondent's parental rights was in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App at 41.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Christopher M. Trebilcock